(52 South. 531.)

No. 17,526.

CAGE v. QUAKER REALTY CO., Limited.

(April 25, 1910. Rehearing Denied May 24, 1910.)

*(Syllabus by the Court.)*

TAXATION (§ 730*)—SALE FOR TAXES—ADJUDICATION TO STATE—EFFECT.

Plaintiff being in possession of certain property enjoined the placing of the defendant in possession of the same under a writ of possession, which was granted to him as holder of an auditor's deed dated in October, 1902, executed to him under Act No. 80 of 1888. The property had been adjudicated to the state in 1883 at a tax sale for delinquent state taxes. It was reoffered for sale by the state under Act 80 of 1888 and adjudicated to it. At that time plaintiff was in possession of the property, but without title, and had been for many years, but not sufficiently long for him to have acquired ownership by prescription. The state did not take possession under the adjudication to it. At the time defendant sought to take possession under the auditor's deed, plaintiff had been in possession long enough to have acquired by prescription. The district court rendered judgment adverse to the plaintiff, and he appealed. *Held* that, through the second adjudication to

the state its title became good and perfect (section 1, Act No. 80 of 1888), and plaintiff's right to invoke prescription was cut off.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 730.*]

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Calhoun Cage against the Quaker Realty Company, Limited. From the judgment, plaintiff appeals. Affirmed.

Geo. H. Terriberry and Meyer S. Dreifus, for appellant. William Winans Wall, for appellee.

NICHOLLS, J. Plaintiff alleged that he was the owner of the following described real estate, situated in the city of New Orleans:

"A certain triangular square of ground in the First municipal district, bounded by Roman, Prieur, Melpomene and Thalia streets, measuring as follows: Fifty-eight (58) feet nine (9) inches and three lines (3) front on Roman street, one hundred and thirty (130) feet, one (1) inch and four (4) lines in front on Prieur street by a depth of three hundred and two (302) feet, eight (8) inches and six (6) lines in front on Melpomene street and three hundred eleven (311) feet one (1) line on a line running from Roman street to Prieur street, being the dividing line between the Annunciation and Nuns Faubourg, the whole American measure."

That petitioner had acquired the ownership of said real estate by the prescription of 30 years, having had actual physical and uninterrupted possession of said real estate since the year A. D. 1869.

That the Quaker Realty Company, Limited, had caused to be issued by this honorable court, in the matter styled, "In re Quaker Realty Co. Ltd., Praying for Possession, No. 85,355," two writs of possession, one directed to petitioner, and one directed to Adam Wilson, and that civil sheriff would deliver unto the Quaker Realty Company, Limited, possession of said property unless restrained by this honorable court.

That Adam Wilson was occupying said property with petitioner and by permission of petitioner, who was the sole owner thereof; that said Quaker Realty Company, Limit-

ed, claimed title to said property by virtue of an alleged and pretended tax sale made to its author, the Aztec Land Company, in accordance with section 3 of Act 80 of 1888; that said tax sale as well as the taxes and assessments whereon it was based were null, void, and of no effect, for the reason that so much of said square of ground as this petitioner claimed the ownership of was not included in said assessment, and for the further reason that said assessment was in the name of a person who had no title to said property, and it was therefore null, void, and without effect, and should be annulled, avoided, and canceled; said sale was void for the further reason that no notice thereof was given as required by law, and for the further reason that all the proceedings culminating in said sale were illegal; that the Quaker Realty Company, Limited, was utterly without title to such land in said square of ground as was herein described, and the causing of the aforesaid ex parte writs to be issued was simply and solely one of the steps in a fraudulent plan to dispossess petitioner of real estate, the ownership and full and sole title to which petitioner had acquired by the prescription of 30 years, and petitioner specifically charged fraud.

That a writ of injunction should issue restraining said Quaker Realty Company, Limited, and H. B. McMurray, civil sheriff, for the parish of Orleans, state of Louisiana, from proceeding further with the execution of the writs of possession as heretofore referred to; that the value of the property herein referred to was about the sum of $2,100.

In view of the premises he prayed that a writ of injunction issue herein enjoining and restraining said Quaker Realty Company, Limited, and H. B. McMurray, civil sheriff of the parish of Orleans, from proceeding any further with the execution of the writs of possession obtained in the suit styled "In re Quaker Realty Company Ltd., Praying for Possession, No. 85,355," of the docket of this court; that said Quaker Realty Company, Limited, through its proper officer, be cited to appear and answer hereto, and that after legal proceedings had there be judgment against said Quaker Realty Company, Limited, and that this injunction be maintained, and that petitioner be recognized as the owner of so much of said square of ground as was described herein; that said pretended tax sale, in so far as it might purport to convey title to said property owned by petitioner and hereinabove fully described, be annulled, avoided, and canceled. He further prayed for costs, and for such other and further orders as the nature of the cause might require, and law and equity permit.

The injunction prayed for was ordered to be issued and was issued. Defendant filed an exception that plaintiff's petition disclosed no cause of action.

It afterwards answered, pleading, first, a general denial. Further answering, it averred: That it purchased from the Aztec Land Company, Limited, on the 13th day of March, 1905, the following described property, to wit, a certain triangular square of ground, situated in the city of New Orleans, La., in the Fourth municipal district of said city, and bounded by Roman, Prieur, Melpomene, and Thalia streets; that the Aztec Land Company, Limited, purchased said property from the auditor of public accounts, acting by virtue of section 3 of Act No. 80 of 1888, and Act 126 of 1896, with the right to be sent into possession in accordance with the provisions of section 3 of Act 80 of 1888; that said property was bid in for and adjudicated to the state of Louisiana for the delinquent state taxes of the year 1883, assessed in the name of John Hanley or John Hoiley, by Joseph Desposito, the duly appointed and authorized deputy of James D. Houston, state tax collector of the First or

Upper district of the city of New Orleans, La., at an offering thereof under Act No. 96 of 1882, on December 13, 1884, at the principal front door of the building in which the civil district court in and for the parish of Orleans was held, and that on February 4, 1885, said Joseph Desposito, deputy aforesaid, in his official capacity executed an act of sale of said property in notarial form to the state of Louisiana before Joseph Hall Spearing, then a notary public of this city, which act of sale was registered in the conveyance office in Book 122, folio 275.

That said property was forfeited to the state of Louisiana for the delinquent state taxes of the years 1871 to 1877, inclusive, under the Revenue Laws of 1871 (Act No. 42, of 1871) and 1877 (Act No. 96, of 1877), respectively, there having been a separate forfeiture for each of said years, 1871 to 1877, inclusive, as would appear more fully from the lists of delinquent state tax papers for said years, on file in the office of the auditor of public accounts, register of conveyances, and the recorder of mortgages, and that said taxes for said years or any of them were not paid by any former owner prior to said forfeitures, nor has said property ever been redeemed from any of them.

That respondent's said tax titles to said property had been quieted and confirmed by the prescription of three years as embodied in article 233 of the state Constitution of 1898, which prescription respondent pleaded in support of its title and in bar of plaintiff's demand.

That said plaintiff, Calhoun Cage, was never the owner of said property, and at the date of the issuance of said writ of injunction herein was absolutely without any right to the possession of the same; that the writ of injunction sued out herein was willfully, wrongfully, and wantonly obtained from this court by false allegations, and had damaged respondent in the full sum of $50, in that it had been forced thereby to employ an attorney at law to protect its rights, and had agreed to pay said attorney at law $50 as a fee for his services which compensation was entirely reasonable and proper.

It prayed that the injunction issued herein might be dissolved and set aside, and plaintiff's suit dismissed at his costs, and that there be judgment in favor of respondent over and against plaintiff, recognizing respondent as the sole owner of said hereinbefore described property, and as such to be entitled to the possession thereof, and for $50 damages as aforesaid, with interest thereon at the rate of 5 per cent. per annum from the date of rendition of judgment herein until paid. Further it prayed that Edward C. Killian, the surety on the injunction bond, be condemned in solido with said plaintiff for said damages and costs; and for general and equitable relief.

The district court rendered judgment in favor of plaintiff and against defendant, ordering and decreeing that the injunction issued herein in so far as to prohibit any further proceeding under the writ of possession issued in suit No. 85,355 beyond placing defendant, the Quaker Realty Company, Limited, in possession of the following described property, to wit: Lot No. 1 in the square bounded by Roman, Prieur, Melpomene and Thalia streets, measuring 44 feet, 9 inches on Prieur street, and 147 feet, 10 inches and 4 lines in depth on the other side line; said lot being No. 1, forming the corner of Prieur and Melpomene streets and being triangular in shape. It is further ordered that there be judgment in reconvention in favor of the said defendant, the Quaker Realty Company, Limited, and against the plaintiff, Calhoun Cage, recognizing the said defendant as the owner of the above-described property.

It is further ordered that in all other respects the reconventional demand of the defendant be dismissed, as in case of nonsuit, and that said defendant pay all costs.

Judgment read and signed in open court February 1, 1909. Judgment signed in open court February 5, 1909.

Plaintiff has appealed.

Defendant has not answered the appeal.

The defendant in support of his title introduced in evidence a copy of a notarial act before Joseph H. Spearing, in which appeared Joseph Desposito, representing himself as the duly appointed and authorized deputy of James D. Houston, state tax collector of the First or Upper district of the city, in which he declared that on the 13th of December, 1884, acting under Act No. 96 of 1882, he offered for sale in enforcement of taxes due on the same a certain triangular square of ground situated in the Fourth district of the city, bounded by Roman, Prieur, Melpomene, and Thalia streets, designated as triangular square No. 430, which property was duly and legally assessed for 1883, and advertised in the name of John Hanley, Jr.; that, at said offering, no one having offered to pay the taxes thereon or to bid at all on said property or any portion thereof, he had adjudicated the same to the state of Louisiana. In the said act he recited the different formalities which had been taken in the matter of said sale, and declared that he had in making said sale complied with all the requirements of the law in respect thereto.

After making such recitals he said that in view of the premises, and in pursuance of the adjudication, and by virtue of the promises of Act No. 96 of 1882, he granted, bargained, sold, assigned, transferred, set over, and delivered the said described property with all the improvements thereon and rights, ways, privileges, and appurtenances thereunto belonging or appertaining, with the right to be put into actual possession thereof by order of any court of competent jurisdiction, the said property being redeemable at any time within the space of one year, beginning on the date the act then passed was filed in the conveyance office, by paying the price of adjudication, with 20 per cent. and costs added in each instance.

This act was recorded in the conveyance office in the city of New Orleans on May 2, 1885. On the 27th of October, 1902, W. S. Frazee, State Auditor, executed in presence of two witnesses a writing in which he declared that, in pursuance of section 3 of Act No. 80 of 1888 and Act 126 of 1896, he, by said instrument, sold, assigned, and delivered to the Aztec Land Company, Limited, a certain triangular square of ground, bounded by Roman, Prieur, Melpomene, and Thalia streets, designated as triangular square No. 430; that said described property was adjudicated to the state of Louisiana on the 13th day of December, 1884, as the property of John Hanley, Jr., by the state tax collector of the Fourth district of the city of New Orleans for unpaid taxes due the state of Louisiana for the year 1883, and had been once advertised for sale by the state tax collector in accordance with the provisions of Act No. 80 of 1888, and failed to sell; that he had received bids for said described property as would appear by an application and bid of the Aztec Land Company, Limited, on the 16th October, 1902, and that the sale to said company was made for cash in current money, the price being $21.56, the receipt of which he acknowledged. This act was recorded in the conveyance office of the city of New Orleans on January 19, 1903.

On the 13th March, 1905, the Aztec Land Company, Limited, by act under private signature, sold to the Quaker Realty Company certain property described in that act which was recorded on March 13, 1905.

The plaintiff alleged, as has been stated, that the Quaker Realty Company, Limited, had caused to be issued by the civil district court, in the matter entitled "In re Quaker Realty Company, Limited, Praying for Possession No. 85,355," two writs of possession, one directed to him and one directed to Adam Wilson, and that the sheriff would de-

liver said property to the Quaker Realty Company unless restrained by the court; that Adam Wilson by petitioner's permission was occupying with petitioner part of the property which belonged to petitioner as stated in his petition. The plaintiff obtained in this proceeding an injunction against the execution of the two writs of possession which was in the hands of the sheriff. Those writs have not been produced or shown by either plaintiff or defendant—indeed no part of the record in suit No. 85,355 is before the court.

Plaintiff urges that so much of the square of ground as he claims the ownership of was not included in the assessment; that it was assessed in the name of a person who did not own it; that no notice was given as required by law; and that all the proceedings culminating in said sale were null and void.

The present action is an injunction proceeding brought by Calhoun Cage, alleging himself to be the owner and in possession of certain described property in the First district of New Orleans. He alleges that he has acquired ownership of said property by prescription. He obtained an injunction directed towards the Quaker Realty Company, enjoining it from carrying into effect a writ of injunction which it had obtained from the civil district court for the parish of Orleans, ordering the sheriff to take into his possession as belonging to that company. The company claims that said property was by tax sale adjudicated to the state, and had thereafter been sold by the state through deed from the State Auditor to the Aztec Realty Company; that defendant had acquired that property from the Aztec Realty Company. Defendant does not pretend that the state, the Aztec Realty Company, or itself had ever had possession of that property. So far from that the proceedings of the defendant have for their object the obtaining of possession for it and the ousting of Cage from the same. Cage, in taking out the injunc-

tion, is defending his possession and his ownership, and the Quaker Realty Company is claiming ownership and the right to possession thereunder.

The plaintiff, Cage, is an old colored man, who has established beyond doubt that he has been in possession of the property which he now occupies continuously since 1869 or 1870, without opposition from any quarter. The property was a swamp when he went upon it. It was in reality unfit for habitation—no one attached value to it, nor thought of making use of it until within the last few years, when, by reason of conditions which no one anticipated would arise in a life time, it has suddenly attracted (as all the property of that character in the rear of New Orleans) the attention of parties speculating in tax titles, as affording extraordinary possibilities for future gain.

Cage while occupying the premises, built a hut upon it in which he had continuously lived and he also built additionally several small buildings. He ditched the place, inclosed it by a fence, and by carrying to it from day to day baskets of earth which he dumped into the swamp, made the place habitable. The defendant charges the plaintiff with being a squatter upon the property, a trespasser who has no rights, and is entitled to no consideration whatever. That may have been his status originally, but one which worked no injury to the actual owner of the property. By and through actual possession he had long since lost the character of a trespasser, and has acquired rights as a possessor, which he is entitled to protect through the judiciary.

He has in our opinion obtained ownership of the property which he is now occupying by the prescription of 30 years unless the running of prescription in his favor was interrupted before it was acquired. Defendant contends that prescription was interrupted by the ownership of the property by the state before prescription was acquired. It

MADERE v. ALEXANDRE.

urges that no prescription could run in plaintiff's favor during the ownership of that property by the state, as it is universally recognized that no prescription can be pleaded against it. The plaintiff claims that if the state, through the tax proceedings which defendant sets up, obtained absolute ownership of the property, carrying with it the constructive possession which flows from ownership, it might be conceded that the state's ownership of the property could not be divested through the prescription by adverse possession thereof. It is urged, however, that if the proceedings did not carry with them absolute ownership, but required something to be done thereafter, or possession to be taken after the tax sale in order to convey and complete ownership, then, until such subsequent proceedings should have been resorted to, or such subsequent possession obtained, prescription continued to run in favor of the actual possessor, and he could invoke prescription in aid of his occupancy.

That if the situation was such that the state had to eke out its claim to ownership by invoking the aid of an exemption from the effect of prescription defendant in possession had the right to resist that plea by all legal objections; that the rule that prescription does not run against the state does not mean that a claim to prescription cannot be set up by way of resistance to claims of ownership when advanced by the state; that the Quaker Realty Company, as a plaintiff out of possession, invoked herein in aid of its claim the state's exemption from the operation of prescription; that it could not urge estoppel under such circumstances. The question arises in this case whether the proceedings on which defendant relies and bases its right carried with them as result the interruption of prescription running in favor of the plaintiff arising from actual possession. We must say at the threshold that the forfeitures to the state to which defendant company refers do not enter in our opinion as factors in determining the result. The state abandoned any claim under those forfeitures, when she advanced her claims as a creditor against the alleged owner, and proceeded to a tax adjudication as against him. The state's rights must be made to rest upon the tax proceedings.

At the time of the proceedings taken by the state against the property adjudicated to it in 1883, in enforcement of delinquent state taxes and at the time of that adjudication, the plaintiff, Calhoun Cage, was not the owner of the same. He does not claim that he was then the owner. He had not then paid a dollar of taxes upon it, nor has he since done so. The actual owners of the property at that time, whoever they may have been, also paid no taxes upon it, evidently attaching no value to it. They abandoned it, leaving it to be itself responsible for its just proportion of taxes due to the state. The plaintiff does not deny the fact that after the adjudication to the state the property was by it offered for sale under Act 80 of 1888, a second time, and that it was a second time adjudicated to the state; that second adjudication had the effect of cutting off the rights of all persons who had been interested in the property, and placed the title of the state thereafter beyond future attack. It became thereafter good and perfect against all parties. Section 1 of Act 80 of 1888.

Under that view of the situation, the judgment appealed from is correct, and it is hereby affirmed.